Yellow Cab Company of Pittsburgh, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

James L. Sunstein, t/a Airport Limousine and Coraopolis Taxi Service, Inc., Intervenors.

Argued June 1, 1981, before President Judge CRUMLISH and Judges ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Richard S. Dorfzaun,* with him *Robert J. Marino, Dickie, McCamey & Chilcote,* for petitioner.

*Marlane Chestnut,* with her *Mark S. Jennings,* Assistant Counsel, *Alfred N. Lowenstein,* Deputy Chief Counsel, and *George M. Kashi,* Chief Counsel, for respondent.

*John A. Pillar, Pillar & Mulroy,* with him *Jerome Solomon,* for intervenor, James L. Sunstein, t/a Airport Limousine Service.

OPINION BY JUDGE ROGERS, July 6, 1981:

This is an appeal from an order of the Public Utility Commission approving a transfer from Coraopolis Taxi Service, Inc. (transferor) to James L. Sunstein (transferee, trading and doing business as Airport Limousine Service) of the right:

To transport, as a common carrier, persons upon call or demand in the borough of Coraopolis,

and the townships of Moon, Crescent, Robinson and Findley, Allegheny County.

Yellow Cab Company of Pittsburgh (appellant) opposed the transfer application contending that the transferor, having abandoned the right to render service as evidenced by its certificate of public convenience, had nothing to transfer. An Administrative Law Judge and the Commission found that there had been no abandonment and approved the transfer. This appeal followed. We affirm.

The evidence on the issue of abandonment is as follows:

Clyde Bailey, Esquire, a member of the Allegheny Bar and president of the transferor, purchased the certificate from Mr. and Mrs. Walter Houston in 1970. Mr. Houston was retained to manage the daily operations of the taxi service. Five years later Houston became ill, was hospitalized on several occasions and, although assisted by his wife, was physically unable to provide the level of reliable service desired by the public. Revenues declined, employees resigned, and some equipment was sold or inadequately maintained.

Bailey was unable to find a managerial replacement for Houston and, in 1978, decided to sell the certificate and other remaining assets of the corporation. Offers of sale to existing carriers were rejected and, in August, 1978, Bailey filed an application with the Commission to discontinue service as required by Section 1102(3) of the Public Utility Code, 66 Pa. C. S. §1102(a)(3). He testified with regard to the discontinuance application that he had no intention to abandon his rights under the certificate but merely hoped that an offer to purchase the corporate assets would result from the official notice of his desire to discontinue service.

This hope was realized. Shortly after the notice appeared in the Pennsylvania Bulletin Bailey was sought out by the transferee, a sale of assets including the certificate was negotiated and the application for discontinuance was withdrawn. In September, 1978, the application for transfer here at issue was filed with the Commission.

Our review in these cases is limited to determining whether constitutional rights have been violated, an error of law committed, or whether the findings, determinations and order of the Commission are supported by substantial evidence. *Blue Mountain Consolidated Water Company v. Pennsylvania Public Utility Commission,* 57 Pa. Commonwealth Ct. 363, 426 A.2d 724 (1981).

The appellant argues that it was error on the part of the Commission to find in the face of the evidence of declining service and revenues and the filing of an application to discontinue service that the transferor had not abandoned his right to render public service. "To constitute an abandonment there must be an intention to abandon together with external acts by which the intention is carried into effect." *Byerly v. Pennsylvania Public Utility Commission,* 440 Pa. 521, 525-26, 270 A.2d 186, 189 (1970). *See Morgan Drive Away, Inc. v. Pennsylvania Public Utility Commission,* 6 Pa. Commonwealth Ct. 229, 293 A.2d 895 (1972). The evidence of Bailey's intentions was at best conflicting and, therefore, a matter for the Commission to resolve.[1] *See Dublin Water Co. v. Pennsylvania Public Utility Commission,* 206 Pa. Superior Ct. 180, 213 A.2d 139 (1965).

While it is conceded that the transferor markedly curtailed its service, such curtailment or even nonuse,

---

[1] The filing of an application to discontinue service, later withdrawn, is relevant to the issue of Bailey's intent in this regard; it is not conclusive on the issue.

especially when compelled by events and circumstances beyond the carrier's control, does not constitute abandonment. *See W. D. Rubright Co. v. Pennsylvania Public Utility Commission,* 197 Pa. Superior Ct. 242, 177 A.2d 119 (1962) (authorities collected); *Feather v. Pennsylvania Public Utility Commission,* 41 Pa. Commonwealth Ct. 544, 399 A.2d 829 (1979). *Cf. Lawson v. Simonsen,* 490 Pa. 509, 417 A.2d 155 (1980). The transferor's continued maintenance of tariffs and insurance, filing of annual reports and payment of annual assessments contradict the assertion of abandonment and provide substantial support for the Commission's determination. *Cf. Byerly v. Pennsylvania Public Utility Commission, supra,* 440 Pa. at 526, 270 A.2d at 188.

Order affirmed.

## Order

And Now, this 6th day of July, 1981, the order of the Pennsylvania Public Utility Commission is affirmed.